Estate of J. A. Kreis, Deceased, Herbert Clark, Ernest Williams, and C. L. Oliver, Executors v. Commissioner.
Estate of Kreis v. Commissioner
Docket No. 20159.
United States Tax Court
T.C. Memo 1954-139; 1954 Tax Ct. Memo LEXIS 109; 13 T.C.M. (CCH) 835; T.C.M. (RIA) 54245; August 25, 1954, Filed *109 Decedent sold a farm on January 5, 1943, made up of parcels of land acquired before and after March 1, 1913, and upon which there were approximately 40 improvements erected by the decedent. Held, petitioner failed to prove that respondent's determination as to the adjusted basis of the farm was erroneous. George E. H. Goodner, Esq., Munsey Building, Washington 4, D.C., and Dewey R. Roark, Esq., for the petitioner. Everett E. Smith, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of petitioner's decedent in the amounts of $68,205.31 and $2,969.09 for the taxable years 1943 and 1944, respectively. The determination of an overassessment of $36 for the taxable period January 1 to January 26, 1945, was not contested. Petitioner did not appeal from several of the adjustments in the statutory notice of deficiency. At the hearing petitioner waived a number of allegations of error contained in the petition, and petitioner is deemed to have waived several other allegations of error in support of which petitioner has made no argument on brief. The issues for decision are: *110 1. Whether respondent nullified the determination of the deficiencies by his answer to paragraph 3 of the petition, and 2. Whether the adjusted basis of certain farm properties determined by respondent was erroneous. Findings of Fact J. A. Kreis, hereinafter referred to as decedent, was a resident of Knoxville, Tennessee, and filed his income tax returns for the taxable years in question with the collector of internal revenue for the district of Tennessee. Decedent died on January 26, 1945, and his estate is the petitioner herein. On January 5, 1943, decedent sold to the United States of America certain farm properties known as Riverside Farm for a total consideration of $239,496.50. Riverside Farm, which was operated as a hatchery and dairy farm, lay between the Holston and Tennessee Rivers, about three miles from Knoxville, Tennessee. Decedent acquired the land comprising Riverside Farm at various times. He acquired 288.3 acres prior to March 1, 1913, which respondent determined cost decedent $25,650 and had a basis of $33,832. Neither the cost of these 288.3 acres nor their fair market value on March 1, 1913 exceeded $33,832. Decedent acquired 57.26 additional acres between *111 1915 and 1923 which respondent determined cost decedent $13,082 and which actually cost decedent less than that amount. Decedent purchased Boyd Island, containing 109 acres, for $21,939.05 on September 18, 1942. Respondent allocated to said island $26,360 of the total sales price received by decedent. There were some 40 buildings or improvements on Riverside Farm at the time of its sale. All were erected by the decedent. The improvements, the approximate date of their erection, and the opinions of the expert appraiser who testified for petitioner as to their estimated cost and the estimated amount of accrued depreciation on January 5, 1943, are as follows: Approximate
Date of
Estimated
Accrued
Erection
Cost
Depreciation
Stone Brooder House
1930
$ 20,590.15
$ 5,426.16
Stone Incubator House
1930
9,779.08
2,337.63
Concrete Water Tank and Tower
1922
746.15
305.92
Frame Hatchery Machinery Shop
1938
1,126.48
158.74
Frame Hatchery Office
1926
2,188.45
890.16
Frame House near Hatchery
1915
538.33
Frame Garage at Hatchery
1926
1,193.47
Frame Machinery Shed
1928
785.76
455.74
Frame Turkey House
1932
3,729.45
1,193.42
Frame Tenant House
1920
1,861.96
1,109.13
Frame Garage
1926
284.89
142.44
Frame House
1922
5,067.95
2,254.01
Frame Barn
1922
5,191.42
2,907.20
Concrete Stave Silo
1937
1,276.95
178.77
Cinder Block Shipping, Bottling and Ice
Cream Plant for Dairy
1925-1940
22,265.38
3,680.84
Concrete and Frame Cooling Tower
1940
289.86
28.99
Bull Shed
1938
433.28
77.99
Masonry Dairy Office
1940
3,098.77
159.58
Frame Dairy Office
1938
465.60
51.65
Frame Garage and Storage
1935
1,210.40
278.67
Frame House
1933
3,671.93
891.76
Stone Dairy Barn
1938
18,153.16
1,547.51
Eleven Turkey Houses
1930
1,744.05
872.02
Frame House
1925
2,513.33
1,121.57
Frame House
1925
2,069.23
931.05
Frame House
1920
1,849.04
1,035.46
Frame House
1926
3,081.11
1,263.26
Frame Dairy Barn
1935
14,852.46
2,243.58
Concrete Drinking Trough
1930
134.08
67.04
Frame House
1930
1,828.09
566.71
Frame House
1920
3,564.84
2,002.43
Frame House
1929
3,651.98
1,305.46
Frame House
1929
3,869.56
1,408.17
Frame House
1920
1,425.53
798.30
Frame House
1920
1,380.99
776.11
Frame House
1925
2,270.79
1,002.16
Frame Warehouse
1919
5,096.24
3,006.78
Frame Cow Barn
1,474.03
1,120.26
Fences
1935
6,842.06
2,599.98
Drainage Ditches
1938
7,219.70
794.17
Retaining Walls
1938
1,319.30
145.12
Railroad Sidings
1926
3,867.12
1,933.56
Sewerage
1938
5,032.52
452.93
Water Supply System
1937
7,823.68
2,190.63
Residence
1915-1925
18,475.31
Total
$205,333.91
$51,713.06
*112 In the decedent's Federal income tax returns for the taxable year 1942 information concerning the improvements on Riverside Farm was disclosed as follows: Depreciation Hatchery - Calendar Year 1942
BUILDINGS, Estimated Life 20 years.
Remain-
Deprecia-
Year
Accrued
Balance Un-
ing Life
tion Allow-
Acquired
Cost
Depreciation
recovered
after 1941
able 1942
1930
$10,243.36
$6,047.31
$4,196.05
8 1/2 yrs.
$512.17
Depreciation Dairy and Farm - Calendar Year 1942
Re-
Re-
maining
maining
Accrued
Life
Life after
Deprecia-
Year
Depreciation
Balance
1941
tion Allow-
Estimated Life
Acquired
Cost
through 1941
after 1941
(yrs.)
able 1942
Wells 10 yrs.
1935
$ 660.00
$ 619.34
$ 40.66
1
$ 40.66
1937
1,472.76
662.75
810.01
4 1/2
147.27
Dairy and Farm Bldgs. 20 yrs.
1921
1,434.16
745.48
688.68
9 1/5
71.70
1933
549.79
265.66
284.13
12
27.49
1934
600.00
213.00
387.00
13 11/12
30.00
1937
7,897.62
1,974.40
5,923.22
15
394.88
1938
6,700.44
1,172.57
5,527.87
16 1/2
335.02
1939
312.22
39.02
273.20
17 1/2
15.61
1940
714.79
53.61
661.18
18 1/2
35.74
1941
612.22
15.31
596.91
19 1/2
30.62
1941
1,472.73
36.82
1,435.91
19 1/2
73.64
Fences 12 yrs.
1931
533.66
466.94
66.72
1 1/2
44.47
*113 The cost and the unrecovered balance or adjusted cost as of January 1, 1943, of the improvements comprising Riverside Farm, with the exception of decedent's residence, are computed from the information shown on decedent's Federal income tax return for 1942, as follows: Balance
Balance
Unrecovered
Depreciation
Unrecovered
Cost
1/1/42
1942
1/1/43
Hatchery Buildings
$10,243.36
$ 4,196.05
$ 512.17
$ 3,683.88
Wells
2,132.76
850.67
187.93
662.74
Dairy and Farm Bldgs.
20,293.97
15,778.10
1,014.70
14,763.40
Fences
533.66
66.72
44.47
22.25
Totals
$33,203.75
$20,891.54
$1,759.27
$19,132.27
The cost and the unrecovered balance or adjusted cost as of January 5, 1943, of the improvements comprising Riverside Farm, with the exception of decedent's residence, as determined by the respondent in the statutory notice of deficiency are as follows: Accrued
Unrecovered
Depreciation
Balance
Cost
to 1/5/43
1/5/43
Hatchery Buildings
$10,243.36
$ 6,389.24
$ 3,854.12
Wells
2,132.82
1,471.72
661.10
Dairy and Farm Bldgs
20,268.82
5,525.48
14,743.34
Fences
629.81
539.45
90.36
Totals
$33,274.81
$13,925.89
$19,348.92
*114 Respondent determined that the cost of decedent's residence was $8,000. Petitioner alleges in paragraph 3 of the petition: The taxes in controversy are income taxes alleged to be due from J. A. Kreis, deceased, and are for the years and in the amounts as follows: 1943
$68,205.31
1944
2,969.09 All of said amounts are in dispute and petitioner alleges that the decedent overpaid his taxes for said years. In Paragraph 3 of the answer respondent: Admits that the taxes in controversy are income taxes of J. A. Kreis, deceased, and are for the years 1943 and 1944. Denies the remaining allegations contained in paragraph 3 of the petition. Opinion We find without merit petitioner's contention that respondent's answer to paragraph 3 of the petition nullifies the determination of the deficiencies. As the petitioner did not contest all of the adjustments made in the statutory notice of deficiency, respondent merely denied that the full amount of the deficiencies determined was in controversy. The decedent, J. A. Kreis, sold certain farm properties known as "Riverside Farm" on January 5, 1943, for $239,496.50. The issue involved is the amount of gain realized on *115 the sale. The principal dispute concerns the adjusted basis of more than 40 buildings or improvements that were on the property at the time of the sale. Section 113(a) of the Internal Revenue Code provides that the basis for determining gain or loss "shall be the cost of such property" or in the case of property acquired prior to March 1, 1913, the fair market value of the property as of that date if greater than the basis otherwise determined. Section 113(b)(1)(B) provides that the adjusted basis of the property shall be its basis less the amount of depreciation "allowed as deductions in computing net income * * * but not less than the amount allowable * * *." All of the buildings or improvements were erected by or for the decedent. Respondent determined that the residence cost $8,000 and that the other improvements cost $33,274.81. He determined that the accrued depreciation on January 5, 1943, amounted to $13,925.89 and that the adjusted basis was $27,348.92. Petitioner contends, on the other hand, that the improvements cost $205,333.91, that the accrued depreciation on January 5, 1943, amounted to $51,713.06, and that the adjusted basis was $153,620.85. *116 Petitioner concedes that it had the burden of proof. Cf. Burnet v. Houston, 283 U.S. 223. The decedent was required to keep records and there is evidence that some records were kept, since decedent's bookkeeper purportedly testified as to certain transactions from records maintained by her. Such records, if adequately kept, should furnish the fountainhead for establishing the cost of the improvements and the amount of accrued depreciation. They were not, however, introduced in evidence, nor did petitioner explain its failure to introduce them. Respondent based his determination upon the decedent's 1942 individual income tax return. The return was filed on March 15, 1943, some two months after the sale of Riverside Farm. Decedent signed the return, and statements contained therein as to the cost of the hatchery, dairy, and farm improvements and the amount of accrued depreciation constitute admissions against interest. United States v. Farrell, 35 Fed. (2d) 38. Thus, petitioner was saddled not only with its normal burden, but with the burden of overcoming decedent's admissions. However, no direct evidence, other than the return upon which respondent relies, *117 was introduced to establish the cost of the improvements or the amount of depreciation which had been allowed. While the absence of direct evidence or records is by no means fatal (cf. Wheeler B. Gambee, 4 B.T.A. 1234), more persuasive secondary evidence is required than that introduced by petitioner. Petitioner sought to establish the cost of the improvements by expert testimony as to the estimated cost of erecting similar buildings at the time the buildings in question were constructed. No testimony was offered as to whether the decedent constructed the buildings or hired a contractor to do the work for him; whether he used lumber and stone cut and quarried on the farm or purchased these materials from others; and whether he utilized farm labor in the construction of the buildings or hired laborers from outside. Nevertheless, the estimates were based upon the assumption that the buildings were constructed by an independent contractor who furnished both the labor and materials. No evidence was introduced regarding the cost to others of erecting similar buildings at or about the time the buildings in question were erected. The expert's estimates were based entirely *118 upon records of his employer as to the cost of labor and materials. This data was not introduced in evidence and could be verified by neither the Court nor respondent as to its accuracy or comparability. The petitioner has furnished the Court with little more than a description of the improvements and not too definite information as to the year in which they were erected. No competent evidence was introduced upon the basis of which the Court can exercise its independent judgment as to cost. Although the estimates of the expert are entitled to careful consideration, they are not binding upon this Court (cf. H. H. Blumenthal, 21 B.T.A. 901) and do not constitute proof of the facts upon which they are based. Petitioner did not attempt to establish the amount of depreciation which had been allowed in computing the decedent's net income. It merely offered testimony as to the useful life of the various improvements and computed the allowable depreciation accordingly. Thus, without proving the necessity therefor, petitioner attempted to establish the cost of the improvements by secondary evidence. The secondary evidence consisted of mere estimates of cost based upon unwarranted *119 assumptions and hearsay data. No attempt was made to establish the amount of allowed depreciation; nor did petitioner attempt to explain or offer evidence to overcome the statements contained in the decedent's 1942 income tax return. In our opinion petitioner's evidence falls short of proving that respondent's deter mination was erroneous. The only other matter in controversy is the basis of the approximately 288 acres of land included within Riverside Farm which were acquired by the decedent prior to March 1, 1913. Respondent determined that the property had a basis of $33,832. Petitioner contends that the property had a fair market value of $43,240 on March 1, 1943, which constituted its basis. Petitioner's contention is based upon an expert opinion that on March 1, 1913, the land was worth $150 per acre. The appraisal report, which was introduced in evidence, discloses that the 288 acres was comprised of 125 acres of bottom land and 163 acres of upland. Based upon sales in the vicinity of Riverside Farm, between 1910 and 1916, the expert valued the bottom land at $190 per acre and the upland at $100 per acre for a total of $40,050. The expert then raised the valuation from $139.06 *120 per acre to $150 per acre for a total fair market value of $43,240, because the 288 acres was an integrated unit. The appraisal report contains data concerning the sales upon which the expert relies. Even if we accept this data in the appraisal report at face value, we do not agree that it warrants a finding that the land had a fair market value in excess of $33,832, or $117.47 per acre. It is manifest from a study of the sales figures listed in the appraisal report that the price per acre decreased sharply as the size of the tract increased. All of the sales where the sales price exceeded $117.47 per acre were of tracts of 27 acres or less, with only one exception. That was a sale in 1915 of 105 acres for $118 per acre. The only sale reported which exceeded 288 acres was a sale in 1916 of 998 acres at $69 per acre. Nevertheless, the expert increased his appraised value from $139.06 per acre to $150 per acre because of the size of the tract. Also, the expert disregarded decedent's purchase of 127.3 acres in 1911 or 1912 for $12,350, or $97.18 per acre, as being a partition sale and not an arm's length transaction. However, he lists, and evidently considered, a sale apparently arising *121 out of the same partition proceeding of two acres of land for $175 per acre. Furthermore, the expert did not state that he checked to ascertain whether or not there were any improvements on the small tracts, the selling price of which he considered in arriving at his opinion. Having given careful consideration to the expert's opinion and to the factors upon which it was based, we do not think petitioner has demonstrated that respondent's determination was erroneous. Since petitioner's contentions relating to the cost of land acquired subsequent to February 28, 1913, and the existence of improvements on Boyd Island would decrease the basis, there is no controversy as to these items. We therefore hold that the decedent realized gain on the sale of "Riverside Farm" in the amount determined by respondent. This holding makes unnecessary a recomputation of the earned income credit for the year 1943 and disposes of petitioner's contention that it is entitled to a net operating loss or net capital loss carryover from 1943 to 1944. Decision will be entered for the respondent.